369 P.2d 923

**Dorothy STEVENSON, Plaintiff and Appellant,**

v.

**Vernon L. STEVENSON, Defendant and Respondent.**

No. 9529.

Supreme Court of Utah.

Feb. 27, 1962.

Moreton, Christensen & Christensen, Salt Lake City, for appellant.

Hanson, Baldwin & Allen, Merlin R. Lybbert, Salt Lake City, for respondent.

CALLISTER, Justice.

Plaintiff brought this action for divorce on grounds of mental cruelty. The trial court found that mental cruelty had not been proved and denied the divorce. Plaintiff appeals.

To establish mental cruelty, plaintiff must prove that her husband's cruel treatment caused her to suffer great mental distress.[1] If this is established by substantial and satisfactory evidence,[2] and if there are no circumstances which would justify denying this particular divorce,[3] it should be granted.

1. 30-3-1(7), U.C.A.1953.
2. Hyrup v. Hyrup, 66 Utah 580, 245 P. 335.
3. Anderson v. Anderson, 104 Utah 104, 138 P.2d 252; Steed v. Steed, 54 Utah 244, 181 P. 445.

■ What constitutes mental cruelty must be ascertained from the facts of each case.[4] Whether defendant's conduct was cruel and whether it caused plaintiff to suffer great mental distress, can only be determined in light of the sensibility of this particular plaintiff.[5] Persons' sensibilities may vary due to their different degrees of intelligence, refinement, delicacy of health, etc.[6] For this reason, the same conduct may constitute mental cruelty in one case and not in another. The ultimate answer depends not so much on defendant's conduct, but rather on the effect such conduct had upon the plaintiff.[7]

■ An additional factor of importance is whether the granting of the divorce would conflict with the public interest our divorce statutes were designed to protect.[8] The public has an interest in the preservation of marriages in which the parties have mutual love and respect, and where the circumstances promote the happiness, welfare, health and morality of the parties and of their children. However, there is no public interest in the preservation of a marriage where one of the parties can no longer endure the relationship without impairing his or her health; or where the conduct of one party has deteriorated the relationship to the extent that the parties will no longer continue cohabitation, and the marriage exists only in name but not in fact.[9]

In the instant case, there was evidence that Dr. Stevenson not only required Mrs. Stevenson to assume almost complete responsibility for the maintenance of the house and yard, but she also had to submit to every whim and desire of her husband. For example, Mrs. Stevenson testified that at night after she had retired, she was required to answer all of the doctor's phone calls, was required to get him drinks of water, and when he had to make a night call she would get out of bed and move her car from the driveway. In one instance she did all the work when they were moving to a new home, while defendant merely stood by and watched. The veracity of this testimony was not denied by the defendant. He merely claimed that Mrs. Stevenson had acted in this manner because of her "spirit of cooperation." Plaintiff

---

4. Doe v. Doe, 48 Utah 200, 158 P. 781; 17 Am.Jur. Divorce and Separation, Sec. 47, pp. 285–86.
5. Curry v. Curry, 7 Utah 2d 198, 321 P. 2d 939.
6. Parnay v. Parnay, 55 Cal.App.2d 703, 131 P.2d 562; Keener v. Keener, 18 Cal. 2d 445, 116 P.2d 1.
7. Thompson v. Thompson, 16 Wash.2d 78, 132 P.2d 734.

8. Cordner v. Cordner, 91 Utah 466, 61 P.2d 601.
9. Nelson, Divorce and Annulment, Sec. 6.02, pp. 214–15. See also, Hendricks v. Hendricks, 123 Utah 178, 257 P.2d 366; Wilson v. Wilson, 5 Utah 2d 79, 296 P.2d 977; Curry v. Curry, supra note 5.

further testified that for a period of time when she was suffering such great pain from a herniated intervertebral disc that she had to push a chair to get around the house, Dr. Stevenson forced her to carry out her household duties in the usual manner. Defendant's only explanation was that Mrs. Stevenson had received proper medical attention. Mrs. Stevenson testified that upon one occasion her husband had, without justification, accused her of infidelity. This was denied by Dr. Stevenson.

When it was realized that the continuation of their marriage relationship was in danger, Dr. Stevenson accused Mrs. Stevenson of being a paranoid, and placed the blame for their marital difficulties upon her mental condition.[10] These accusations of mental and emotional disturbance were continued by the doctor until even Mrs. Stevenson became concerned about her own mental condition. To determine whether defendant's accusations of paranoia were true, plaintiff underwent a series of psychological tests given by Dr. Korner. Dr. Korner concluded from these tests that under the circumstances Mrs. Stevenson's reactions were completely normal, and that her disturbance was caused by "an exceedingly upsetting phase of her life." In this written psychological evaluation of Mrs. Stevenson, which was later placed in evidence at trial, Dr. Korner further stated that she was "terrorized by the imagined power of her husband," that "relinquishing the tight control over her feelings at present appears to her fraught with danger," and "in fact, she is in terror of her present situation." Dr. Korner concluded that "Mrs. Stevenson is under considerable pressure but she seems to hold up well under it—at a considerable price in fear, anxiety and discomfort."

After repeated efforts to salvage the marriage, plaintiff filed for a divorce. Even after the divorce had been filed, Dr. Stevenson continued to charge plaintiff with paranoia and other mental disorders. When these charges were made before the trial court judge, he ordered plaintiff to submit to further psychiatric consultations. Thereafter Mrs. Stevenson made 12 visits to Dr Nelson. In answer to questions the trial court judge had posed, Dr. Nelson stated that Mrs. Stevenson desired a divorce in order to obtain freedom from domination, frustration and fear, and that there were no neurotic elements present in this desire. He felt that to grant a divorce would relieve her from her sense of oppression, and that to deny a divorce would only promote her feelings of being oppressed and dominated.

10. That false charges of mental deficiency in connection with other acts justify a divorce for cruelty, see 18 A.L.R. 574;

17 Am.Jur., Divorce and Separation, Sec. 69, p. 303.

■ As has been pointed out, the evidence shows that plaintiff was required to assume all responsibility for maintaining their home and yard and that this responsibility continued even though she was suffering great pain from a herniated intervertebral disc. It was also shown that she had been accused of infidelity, giving her husband a venereal infection, and of being a paranoid. This conduct by defendant must certainly be considered to be cruel, especially in light of his medical knowledge, which included considerable training in the area of mental diseases. The fact that all of defendant's accusations were proved false, would render a claim that they were made in good faith extremely dubious. The effect that defendant's conduct had upon the plaintiff was well established by expert testimony. Mrs. Stevenson was in constant fear, terrorized by the power of her husband, and was possessed with feelings of being oppressed and dominated.

■ After considering the facts of this case in light of the underlying purpose of our divorce statutes, this court finds that Mrs. Stevenson has established mental cruelty and is entitled to a decree of divorce.[11]

The trial court's judgment is reversed and it is ordered that a decree of divorce be entered for plaintiff. It is further ordered that the trial court make a distribution of property and an award of alimony as would be fair and reasonable.

Costs awarded to plaintiff.

WADE, C. J., and HENRIOD, McDONOUGH and CROCKETT, JJ., concur.

---

11. " * * * in divorce proceedings which are in equity, this court will review the facts and weigh the evidence and may substitute its judgment for that of the trial court." Graziano v. Graziano, 7 Utah 2d 187, 321 P.2d 931.