**Joel H. IZATT, Plaintiff, Respondent and Cross-Appellant,**

v.

**Mary C. IZATT, by and through her Guardian and Conservator, Kenneth G. Clark, Defendant, Appellant and Cross-Respondent.**

No. 16882.

Supreme Court of Utah.

March 3, 1981.

---

3. Utah Rules of Civil Procedure, Rule 41.

4. Utah Rules of Civil Procedure, Rule 52.

Rex J. Hanson, Salt Lake City, for defendant, appellant and cross-respondent.

Gordon A. Madsen, Robert C. Cummings, Salt Lake City, for plaintiff, respondent and cross-appellant.

CROCKETT, Justice: *

Defendant Mary C. Izatt (by her guardian) appeals attacking a divorce decree as unjust and inequitable; and plaintiff Joel H. Izatt cross-appeals.

The parties had been married for 16 years and have 4 minor children. They appear to have had a normal and happy family life until May of 1973 when it became necessary for the defendant Mary to undergo surgery. Sparing details not material here, difficulties were encountered which included the fact that she suffered two massive cardiac arrests; and as a result of a malpractice suit, finally obtained two settlements netting her $97,000. Unfortunately, however, she suffered radical changes in her attitudes and personality which appear to have brought on the disharmony and disruptions which resulted in this divorce proceeding.

The defendant's first contention is that the finding that she caused mental cruelty to the plaintiff was improper, because she did not intentionally cause him any harm. She raises no issue as to the propriety of severance of the marriage. She herself stated that she wanted a divorce; and her counsel told the court that "it appears that a divorce will have to be granted." It

---

* Justice Crockett wrote this opinion prior to his retirement.

seems to be a matter of pride and emotional solace to the defendant that the divorce should have been granted to herself, but not to the plaintiff.

■ In determining whether the granting of a divorce on the ground of mental cruelty is justified, the actor's intent is indeed an element to be considered. But the question of controlling importance is whether the spouse's conduct, whether so intended or not, had the effect of inflicting mental cruelty upon the other to such an extent that the trial court is convinced that the marriage has failed and should be dissolved.[1]

■ There was a trial of two days in which considerable testimony was given as to the parties' respective faults and misdoings and the effect they had on each other. We see no useful purpose to be served by detailing the evidence here. It is sufficient to say that there is a reasonable basis therein to justify the trial court's finding that the conduct of each of the parties resulted in mental cruelty to the other and the granting of a divorce to each of them on that ground.[2]

The matter of principal concern here is the defendant's charge that the adjudication as to the property and financial affairs of the parties is so inequitable that it manifests an abuse of discretion which should be corrected. Subsequent to the trial, the court devoted considerable effort and attention in analyzing proposals of the parties. The decree as finally fashioned awarded to the plaintiff the custody of the four minor children with the sole obligation to support them, the family home, the furniture, and the family car. The savings and checking account balances were also awarded to him and he was ordered to assume and pay outstanding family debts amounting to $7,300 + .

The defendant was awarded personal property, and her jewelry of value of $4,000; the $97,000 + she had received for her injuries; the sum of $13,500 which was made a lien upon the home, to be paid to her upon the happening of one of these: 1) plaintiff sells the home or 2) ceases to use it as a home for himself or the children, or 3) the youngest child reaches majority. Defendant was also awarded alimony of $1.00 per year. The decree further requires that the defendant make available the sum of $5,125 for repayment to the plaintiff's parents of one-half of $10,250 which they had advanced to the parties during the defendant's illness.

■ Defendant makes the argument that the $97,000 settlement is exclusively her separate property, and that the court could not properly require her to apply any part of it to pay the debt to plaintiff's parents. She places reliance on Sec. 30–2–1, U.C.A. 1953, which states that:

Real and personal estate of every female acquired before marriage, and all property to which she may afterwards become entitled by purchase, gift, grant, inheritance, bequest or devise, shall be and remain the estate and property of such female, *and shall not be liable for the debts, obligations or engagements of her husband* and may be conveyed, devised or bequeathed by her as if she were unmarried. [Emphasis added.]

She also cites Sec. 30–2–4, which similarly gives a wife the right to recover against third persons for injuries to her.

Consistent with those statutes, the fact that the $97,000 belongs to defendant is not to be doubted. Nevertheless, the fact that she possesses that asset is one of the total circumstances the court could consider in making what he regards as a just and practical allocation of the property and finances of the parties.

1.  See discussion in *Curry v. Curry*, 7 Utah 2d 198, 321 P.2d 939 (1958); *Stevenson v. Stevenson*, 13 Utah 2d 153, 369 P.2d 923 (1962).

2.  That a divorce may be granted to both parties where the evidence so justifies has been recognized in our decisions, see *Mullins v. Mullins*, 26 Utah 2d 82, 485 P.2d 663 (1971); *McKean v. McKean*, Utah, 544 P.2d 1238 (1975), and cases therein cited; and also in other jurisdictions, see 13 A.L.R.3d 1364.

After the misfortunes of defendant's illness and surgery, she was so disabled physically and mentally that she could not function, did not even know her own children. It appears that she has been in the process of slowly recovering. It was necessary for plaintiff's parents to come into the home and help. Sparing itemization, the evidence is that they advanced to and expended at least $13,000 + for the benefit of the parties.

From the worry and tensions resulting from this situation, the plaintiff himself has had to have medical care and has been three times hospitalized and undergone surgery for ulcer and stomach problems. His income is $1,216 per month take-home pay, against which he lists necessary expenses of $1,800 per month, including $223 per month payment on the home mortgage.

As opposed to defendant's attack on making the $5,000 + available to repay plaintiff's parents, the plaintiff's correct and justifiable rejoinder is this: that it is not any more his debt as the husband than it was defendant's as the wife, but one necessarily incurred for the support of the family, and thus an obligation of them both as provided in Sec. 30-2-9; and further, that it was incurred directly and necessarily as a result of the injury for which defendant obtained the settlement, wherefore it should be reimbursed from that settlement. As to this segment of the controversies between these parties, the trial court appears to have reduced the amount of the advancement from $13,000 + to $10,000 + ; and to have directed that the parties each bear one-half thereof.

The other matter of controversy relates to the $13,500 awarded to the defendant, and made a lien upon the home. Defendant asserts that was too little; it should be a full one-half equity therein, whereas plaintiff responds that it was too much, that considering his obligations, particularly with respect to the maintenance of the home and the family and his limited ability

to meet them, there should be no such award at all.

The plaintiff's contentions on cross-appeal relate to the issues discussed above. He argues that the evidence is undisputed that his parents advanced to them $13,-500 + necessitated because of the defendant's health problems and treatment therefor; and that it being a just debt, necessarily incurred for family expenses, should have been reimbursed in full to his parents from the $97,000 which the defendant received, or alternatively, at least a full one-half of the amount, i. e., $6,500, instead of the $5,000 awarded; and that he should have been awarded the home without the lien of $13,500 against it.

Without further discussing the merits of those contentions, we deem it sufficient to say that the trial court appears to have given full consideration to them in connection with all of the other circumstances in arriving at his judgment.

■ We recognize the correctness of the proposition that under Section 9 of Article VIII, Utah Constitution, this Court may review the facts in equity cases. Nevertheless, it is well established that in performing its duty under that section, this Court gives some deference to the prerogatives of the trial judge as the trier of the facts, and makes allowance for his advantaged position in close proximity to the trial, the parties and the witnesses; and does not disturb his findings and judgment merely because we might have viewed the matter differently, but would do so only if it appeared that the evidence clearly preponderates against his findings, or that he has misapplied the law, or abused his discretion, so that an injustice has resulted.[3]

Upon our consideration of the facts and circumstances here and the disposition made by the trial court, we are not persuaded that any such injustice has been done here as to warrant upsetting the judgment.

---

3. See *Stone v. Stone*, 19 Utah 2d 378, 431 P.2d 802 (1967), and cases therein cited; *Wiese v.*   *Wiese*, 24 Utah 2d 236, 469 P.2d 504 (1970).

Affirmed. The parties to bear their own costs on this appeal.

HALL, STEWART, and HOWE, JJ., and MAURICE HARDING, Retired District Judge, concur.

MAUGHAN, C. J., does not participate herein.

HARDING, Retired District Judge, sat.